## RELIANCE LIFE INS. CO. OF PITTSBURGH, PA., v. POWELL.

### No. 4022.

Court of Civil Appeals of Texas. El Paso.

May 15, 1941.

Rehearing Denied June 12, 1941.

Harrison, Rasberry & Lipscomb, of El Paso, for appellant.

R. E. Cunningham and W. E. Ward, both of El Paso, for appellee.

WALTHALL, Justice.

Appellee having agreed to the statement of the nature and result of the suit as made by appellant, we adopt that statement, which is substantially as follows:

On November 16, 1939, appellee filed this suit to recover $2,950, alleged to be due under the terms of an insurance policy providing, in substance, that upon proof by insured that he had become totally and permanently disabled, premiums thereafter accruing would be waived and appellant would pay to assured a monthly benefit equal to one per cent of the face amount of the policy, i.e., $25 a month, payments to begin six months from the date of the receipt of such proof. Appellee alleged in his petition that he had been permanently and totally disabled since December 15, 1925, but no proof of such condition was filed with the appellant until April 4, 1939, after the receipt of which, appellant began payments six months from the date such proof was received. Appellee's suit is for the collection of benefits for nine years and ten months prior to the time proof of disability was filed, but he did not claim any refund because of premium payment during such period. Appellant answered by general demurrer, special exception relating to the four years' statute of limitation, a general denial, a plea of four years' statute of limitation and a plea that the filing of proof of disability was a condition precedent to recovery. The demurrer and exception were overruled and judgment rendered for appellee for $2,950. Appellant perfected this appeal from such judgment.

The case was tried by introducing in evidence the policy and endorsements thereon and a stipulation of counsel about appellee's physical condition. The effect of this evidence was to establish all the material facts so that if appellee's construction of the policy was correct, he was entitled to recover the amount claimed.

The facts are that on the 16th day of April, 1919, appellant issued to appellee an ordinary life policy bearing endorsement, so far as material here, reading as follows:

"If the Insured * * * shall furnish proof satisfactory to the Company that he has become totally and presumably permanently disabled for life * * * and that such disability has then existed for not less than sixty days, the Company will grant the following benefits:

\* \* \* \* \*

"(2) Installment Payments—Beginning six months after the receipt of such proof, the Company will pay to the Insured a monthly income of 1% of the face amount of the policy during the period of total and permanent disability prior to the maturity of the Policy."

The policy matured upon death of the assured.

As admitted by appellant, appellee has been totally and presumably permanently disabled, as such terms are defined in the policy, since the 15th day of December, 1925. Appellee filed proof of such condition on April 4, 1939, and thereupon appellant notified appellee that beginning October 4, 1939, he would receive $25 a month and all premium payments would be waived. On October 4, 1939, appellant paid appellee $25 and continued to pay the same up to and including the date of trial. Also the premium due on April 16, 1939, was waived.

Appellant rested its defense upon the requirement in the policy that appellee must file proof of disability, which began December 5, 1925, but that such proof was filed April 4, 1939, which allegation of disability appellant claimed made appellee's petition subject to its general demurrer, because the filing of proof of disability was a condition precedent to recovery.

It is the contention of the appellee that the policy obligates appellant to pay the monthly installments for the period of his total and permanent disability prior to the maturity of the policy, which occurred on the death of the insured; that appellee filed the required proof of his disability on April 4, 1939; that such proof of disability was pleaded, proved, and accepted by appellant; that the happening of the condition precedent to be determined is whether the condition precedent is one relating to the obligation for both past and future monthly disability payments or for future monthly payments; that is, for payments maturing subsequent to the filing of the proof of disability, the second endorsement on the policy above quoted providing, "Beginning six months after receipt of such proof, the Company will pay to the insured a monthly income of 1% of the face amount of policy during the period of total disability prior to the maturity of the policy."

Appellant construes the clause in the policy, "during the period of total and permanent disability," as a limitation upon the time benefits are payable, and harmonizes with other provisions of the policy.

Appellant insists that appellee's petition failed to allege the filing of the proof of disability, and such so failing, by the terms of the policy, being a condition precedent to appellee's right of recovery, the petition was subject to its demurrer, and the court erred in overruling it.

Appellee's petition alleged that "defendant received the proof of total and permanent disability as sent in by plaintiff which was required by defendant under the terms of the policy," and "defendant approved plaintiff's claim for total and permanent disability" and "paid plaintiff disability benefits of $25 per month beginning October 4, 1939, and has continued to so pay said disability benefits since said date, but has refused to pay any such disability benefits prior to said date of October 4, 1939."

■ We think the court was not in error in overruling appellant's general demurrer to appellee's petition in failing to allege that proof of disability was furnished to the company, the petition having alleged that appellee received the proof of disability sent by him and accepted same as the proof required to be furnished.

While the words in the petition in alleging the fact are not the same as in the policy, the petition sufficiently states the fact of furnishing the proof of disability, which proof was received, accepted and acted upon by appellant. The policy required appellee to "furnish" (not file, as stated by appellant) the proof.

The disability sustained by appellee occurred in December, 1925, and the proof of the disability was furnished appellant on April 4, 1939, and the facts were so pleaded by appellee. The policy provided that "beginning six months after the receipt of such proof (of disability) the Company will pay a monthly income," as stated in the policy. Appellant excepted to the petition on the ground that if any monthly sum was due appellee, it became due more than four years prior to the filing of the petition on November 16, 1939.

The court overruled the exception, and appellant submits error.

The policy matured on the death of the assured.

█ Appellee has been disabled since December, 1925. He furnished proof of his disability on April 4, 1939, and thereupon appellant notified appellee that, beginning October 4, 1939, he would receive the $25 a month and all premiums would be waived, and on October 4, 1939, appellant commenced the monthly payments, and continued to pay until the trial.

The question discussed seems to be: Does the cause of action begin at the time when the disability to the insured occurred, or at the time the proof of disability was furnished the company?

We have reviewed many opinions discussing policies similar to the one here, and as said by Chief Judge McClendon, of the Austin Court of Civil Appeals, in the case of State Life Insurance Company v. Barnes, 58 S.W.2d 189, the authorities in other jurisdictions are not in accord upon the question presented. In that case the policy provided that if the insured, after the payment of one premium, should become disabled the company, upon receipt of proof of disability, would make payment. The controversy of the policy revolves around a construction of the waiver provision in the policy of subsequent payment of premium. Briefly stated, the waiver provided that if the insured should become disabled (under the conditions stated), the company upon receipt of the proof of disability would waive payment of subsequent premiums.

The Austin court in that case held that the waiver took effect at the time of the disability, and did not depend upon the time when proof of the disability was furnished. In this case, as in the Barnes case, supra, there was a waiver of the payment of premiums subsequent to disability.

Without discussing the many cases referred to in the briefs, or trying to harmonize them, the cases of State Life Insurance Company of Indianapolis v. Parry, Tex. Civ.App., 88 S.W.2d 763, and State Life Insurance Company of Indianapolis v. Parks, Tex.Civ.App., 89 S.W.2d 289, both Texas cases, and, as we understand them, present similar questions to the case at bar, and reach the same conclusion. The policy in the Parry case provides:

"* * * upon receipt at its Home Office of due proof of such disability of the insured as may be required by the Company, will grant the following benefits:

"First: Will waive payment of premium thereafter becoming due;

"Second: In addition will pay to the insured a monthly income equal to one per cent. of the original amount of insurance (exclusive of any accidental death benefit). The first monthly payment will be made upon satisfactory proof of disability as above provided, and the subsequent monthly payments will be made on the first day of each month thereafter during such disability."

Appellee in that case made proof of disability about November 22, 1932. Appellant company paid appellee each month after proof of disability was furnished it by appellee the installments payable under the policy, but appellee demanded payment for all monthly installments back of the time he furnished proof of disability. Judge Brown, for the court, said: "We do not believe that such decisions are applicable to this case," and quoted from Mr. Justice Sutherland in delivering the opinion of the Supreme Court of the United States in the case of Bergholm v. Peoria Life Insurance Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416, as follows: "Here the obligation of the company does not rest upon the existence of the disability; but it is the receipt by the company of proof of the disability which is definitely made a condition precedent to an assumption by it of payment of the premiums becoming due after the receipt of such proof."

Judge Brown refers to other cases and distinguishes them in their facts or in the law involved from the case he is discussing. The court refused a writ of error in that case, and while we do not think the case is altogether similar in its facts to the case at bar, it is like it in its contract provisions. Judge Brown reversed and rendered the case.

In the Parks case, to which we referred above, the opinion was rendered by Judge Martin, then of the Amarillo court. The policy provisions in that case are very much like those in the Parry case and in the case at bar, and we need not repeat them here, though the facts and appellee's cause of action are different. In the Parks case the disability occurred in May, 1925, and appellee furnished proof of disability in February, 1933. Suit was filed July 1, 1933. Recovery was sought and obtained in the trial court for forty-five months after disability.

What we wish to state in the Parks case is that the appellant claims that the furnish-

ing of proof of disability marks the beginning of the period for which it is liable for disability benefits, while the appellee claims that the beginning of disability marks such period.

After discussing the case and referring to other authorities, Judge Martin held that the liability of appellant began with the furnishing of proof of disability, and reversed and rendered judgment for appellant.

We have concluded that the appellant was not liable for monthly payments back of the proof of disability. Appellant had made all the monthly payments as they became due subsequent to such proof.

The case is reversed and the judgment is here rendered that appellee take nothing by his suit.

PRICE, Chief Justice (concurring).

I concur in the opinion of Justice WALTHALL. Further, I am of the opinion that the disposition made of the case is sustainable on the theory that proof of loss was not made in a reasonable time. The filing of proof of loss not only determines the date of the beginning of the period for compensation (the maturity of the policy its close), but it is a condition of any liability. As a matter of law proof of loss was not filed within a reasonable time.

Connecticut General Life Ins. Co. v. Smith, Tex.Civ.App., 94 S.W.2d 519, and authorities cited therein.

SUTTON, Justice (dissenting).

I am unable to agree with the majority opinion, and here state my reason for dissent.

The facts are, as indicated, agreed to and undisputed. It was agreed the policy was in full force and effect and that plaintiff was within all the provisions of the policy at the time of his injury and disability December 15, 1925; that he on that date sustained a total and presumably permanent disability which had continued from such date to the date of the trial and of the agreement, February 9, 1940.

The correctness of the trial court's judgment and this appeal depend upon the construction of the disability provisions found in a rider to the policy, particularly "(2) Installment Payments," which is copied in the majority opinion.

There is some confusion in various jurisdictions and in this State, but the differences are not as genuine as they appear to be at first glance. A careful examination will eliminate most of the supposed differences.

An insurance policy is a contract between the company and the insured. The terms of them may differ as widely as there are contracts. It is true they differ in some very material respects from ordinary contracts. The companies write their own contracts, except in cases where the law provides for standard or uniform policies. They are prepared by experts in this particular field and offered to customers as they are. Applying the rules established for this class of contracts, we must approach them as an individual thing. Whether or not the law applicable to other policies is applicable to this will depend, of course, upon the terms of the two contracts.

The plaintiff here contends his disability benefits commenced with the happening of his disability December 15, 1925. The defendant takes the position its liability commenced six months after the receipt of the proof, April 4, 1939; that is, October 4, 1939, when it commenced paying the monthly disability benefits and which have continued to date. The correctness of the one and the fallacy of the other will depend upon the proper construction of the language employed in the light of all the facts and circumstances of this case.

The real undertaking in this policy, and all similar policies, for that matter, is to compensate for a total and presumably permanent disability at the rate of one per cent per month of the face of the policy, in this instance, $25 per month. The author—sole, exclusive author—of a contract who has received the benefits of it ought not and cannot be permitted to avoid the only primary obligation, undertaking and purpose of the contract on a technical interpretation of the author's own terms and language. Only plain, unequivocal language susceptible of but one construction to the contrary will relieve against such primary and sole obligation.

In support of the majority opinion is cited the case of State Life Ins. Co. v. Parks, Tex.Civ.App., 89 S.W.2d 289. Other cases cited are State Life Ins. Co. v. Parry, Tex.Civ.App., 88 S.W.2d 763, and Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 231, 76 L.Ed. 416. It will be noted in the two cases first cited above the second provision of the policy is: "Second: In addition will pay to the insured a monthly income equal to one per cent. of

the original amount of insurance (exclusive of any accidental death benefit.) The first monthly payment will be made upon satisfactory proof of disability as above provided, and the subsequent monthly payments will be made on the first day of each month thereafter during such disability."

In the Bergholm case, supra, the second provision is: "2. Pay to the Insured a Monthly Income for life of 1% of this policy; The first payment of such income to be paid immediately upon receipt of such proof. * * *"

The remainder of this provision is not supplied. It is probably identical with that contained in the first provision which follows the word "proof" with this: "and during the continuance of the total and permanent disability of the Insured."

There are two things significant about these three policies referred to in the cases cited above and that distinguish them clearly and effectively from this case now under consideration. They each fix definitely the time when the first monthly payment is due and when the next shall fall due. In each instance it is fixed as on receipt or immediately on receipt and will continue during the disability. The policy here under consideration fixes no time when the proof shall be made, except it provides that it must not be in less than sixty days after the disability is sustained. To be exact, "and that such disability has then existed for not less than sixty days." It may, so far as the policy is concerned, be made at any time thereafter, sixty days, six months, one year, five years, or any time thereafter. It merely provides that a disability that has continued for less than sixty days cannot be presumed to be "presumably permanent." It then stipulates for an additional six months before it begins payments. This is doubtless intended to give further time for the insured to recover; time for further investigations after the receipt of the proof, and to allocate funds to take care of the disability demands. Certainly the grace period of eight full months from the happening of the disability was inserted for some purpose other than to relieve from the obligation to pay premiums and the income benefits for a minimum of eight months. The exact language of the policy is, "Beginning six months after the receipt of such proof, the Company will pay to the insured a monthly income of 1% of the face amount of the policy during the period of total and permanent disability pri-

or to the maturity of the policy." The question is, What is the period of disability? Is it the period beginning six months after the receipt of the proof? The defendant says it is. The policy does not say so. What could it be other than the time from the date the injury and disability is sustained to the end of it? The defendant by its agreement fixes the period of disability from December 15, 1925, to the date of the trial and its agreement, February 9, 1940, in these words: "That C. Ralph Powell * * * became and has been from the 15th day of December, 1925 to the date of the trial of the above numbered and entitled cause, totally and presumably permanently disabled for life."

The agreed facts are that the proof was made April 4, 1939, and because of this filing of the proof on this date, April, 4, 1939, the defendant seeks to avoid what is otherwise its admitted liability, on the ground that the filing of the proof is a condition precedent. The language of this policy is not what is found in the other policies referred to in the cases cited above. Notwithstanding the plain provisions of the policy that it will pay for the period of disability and its agreement that the period of disability is from December 15, 1925, to date, it is proposed to write into that policy the provisions of the policies involved in the cited cases and bring this case within the rule there laid down, in substance, that it will make the first monthly payment in the sum of $25 beginning six months after the receipt of the proof and continue during the continuing period of disability. This cannot be done, because no time is fixed in which the proof must be made and defendant's agreement is to pay during the period of disability. It is not for the period of disability beginning six months after the receipt of the proof and for the continuing period of disability. As is so aptly said by Chief Judge McClendon in State Life Ins. Co. v. Barnes, Tex.Civ.App., 58 S.W.2d 189, had the company, the author of the policy, desired to seek protection behind such a provision, then it should have inserted it in unequivocal language.

This record discloses the premiums were $16.58 quarterly, or $66.32 annually. All these the plaintiff paid. He does not seek to recover these. He seeks no interest, because the defendant did not agree to pay any. The defendant suffers no injury. It has had the benefit of the premiums, the use of plaintiff's money from month to month and from year to year, and now proposes

to inflict these and the retention of what it agrees it owed and was liable for under its policy, except for the delay in making proof, as the penalties for the failure, and that in the absence of any penal provision in the policy. To permit this to be done, all the rules for the construction of such contracts, to-wit, if the contract is ambiguous or difficult of construction the situation of the parties and their relation to the subject matter may be looked to for the purpose of construction; that an insurance contract will be construed most favorably to the insured and against the company, 24 Tex.Jur. 705, Sec. 29, and the many cases there cited, and that if the language is susceptible of two constructions, that most favorable to the insured will be adopted, American Natl. Ins. Co. v. Jones, Tex.Civ.App., 83 S.W.2d 428, writ refused; Standard Acc. Ins. Co. v. Cherry, Tex.Civ.App., 48 S.W.2d 755; Tex. Jur., supra, must be disregarded.

Salesmen for the defendant in this case were and are in a position to say to prospects honestly and legitimately that the policy offers protection against and compensation for total and permanent disability, unlike competitive policies such as those involved in the three cases first cited and relied upon by the defendant, for the full period of disability and not for the continuing period; not for the remainder of life after proof is made; that there is not time fixed in which the proof must be made, and if delayed full protection is had for the full period; notwithstanding the provision is made for an eight months' delay in beginning payments, whereas other policies begin immediately, the protection goes back. "Insurance companies cannot * * * couch their contracts in doubtful language and allow their salesmen to employ the construction most favorable to the insured to catch the unwary, and then, when the company is hailed into court, claim the benefit of the construction most favorable to it." American Ind. Co. v. Mexia School Dist., Tex.Civ.App., 47 S.W.2d 682, 685, writ refused. These rules are founded in necessity, reason and justice. The insured does not occupy the position of a party to ordinary contracts wherein the parties get together and work out their agreements on an equal footing and agree upon the terms and language and the expression to be given their understanding. The company occupies the position of an expert, one of wide and varied experience in a highly specialized field. The average insured is wholly inexperienced and incapable of understanding the language in which policies are usually couched. The company writes the policy and the insured accepts. He desires protection and seeks and accepts a policy without a fair understanding of its terms.

This may explain the long delay in filing the proof in the instant case. It may be he preferred to permit the payments to accumulate for a harder and rainier day when his needs might be greater and a large sum more useful to him, or to be left to those who have had the responsibility for his care and attention. It may have been oversight and neglect. The record here is silent as to why the proof was not sooner made. It may be because of the provisions of the contract and the absence of contrary provisions that lead counsel to offer no excuse. We think the terms of the policy susceptible of such construction and the course permissible under its terms. I repeat, the policy does not provide within what time the proof must be made. No court can or ought to supply terms omitted.

Some cases wherein the express provisions provide for a reasonable or fixed time within which the proof shall be made hold certain excuses and reasons for not sooner making the proof good as against such specific provisions. In all such cases wherein it is held the proof must be made in a reasonable time, there is a provision fixing some time in which the proof must be made. It seems to this writer that no better excuse can be found in law or reason than the fact this man has sustained and suffered a total and permanent disability, whatever it is. The scourge of such impotency, physical or mental, ought to be sufficient excuse for all failures. Not merely for this particular contract, because he is not required by its terms to offer any, but for all this class. It is right and just that those who contract to compensate for such dire contingencies and disabilities should do so, unless to compel it works to their injury. Injury does not here appear, but benefits heretofore mentioned have accrued to this defendant.

To hold contrary to the trial court in this case all the rules against exceptions, penalties and forfeitures must be ignored, and by construction write such provisions into the contract when none are to be found therein. We must disregard the universal rules applied to such contracts, that is, they will be construed most favorable to the insured and against the company who writes them, and where capable of two constructions the one favorable to the insured will

be given effect. The Supreme Court has approved the views expressed herein and may be found in such cases as Mid-Continent Life Ins. Co. v. Hubbard, Tex.Civ.App., 32 S.W.2d 701, writ refused; State Life Ins. Co. v. Barnes, Tex.Civ.App., 58 S.W. 2d 189; Garrison v. Great Southern Life Ins. Co., Tex.Civ.App., 72 S.W.2d 692, writ refused; Southland Life Ins. Co. v. Gatewood, Tex.Civ.App., 115 S.W.2d 723, affirmed 135 Tex. 177, 141 S.W.2d 588; Minnesota Mut. Life Ins. Co. v. Marshall, 8 Cir., 29 F.2d 977.

The rules adhered to in these cases are not contrary to nor condemned in the cases first mentioned in this opinion. They rather approve. The Bergholm case by the U. S. Supreme Court, as I construe it, expressly approved the Marshall case, but says it is a different case on the facts on the insurance contract. I take it the Supreme Court of Texas, nor the Courts of Civil Appeals, for that matter, has never held that the liability is contingent on the filing of the proof, except in cases wherein the language of the contract makes it so depend. I again repeat for emphasis, if it may be, that in each of the cases Bergholm and State Life Ins. Co. v. Parry and State Life Ins. Co. v. Parks, supra, the second provisions expressly provide: "The FIRST [caps mine] monthly payment will be made upon satisfactory proof of disability as above provided, and the subsequent monthly payments will be made on the first day of each month thereafter during such disability." Judge Martin in the Parks case emphasizes the fact the holding is laid on that express provision and quotes from Holtz New York Life Ins. Co., 7 W. W. Harr.,Del., 1, 179 A. 497, which contains almost the same language as does the Bergholm case. There is no such provision in this contract, nor one similar to it. There is no limitation put on the time in which the proof may or must be made, except that the disability must have continued for not less than sixty days. The time is left unlimited and wide open. Note the first provision common in nearly all the cases cited: "First: Will waive payment of premium thereafter becoming due." Does this mean coming due after the filing of the proof, or after the disability is sustained? We cannot say this provision is free from doubt, but our courts, applying the rules of construction in such cases without any exception, so far as I am aware, hold it applies to and refers to the date of disability. I answer now the question, What is meant by "a monthly income of 1% of

the face amount of the policy?" Exactly what it says, a sum equal to 1% monthly of the face of the policy—12% per annum of the face of the policy. In other words, this is the measure of the liability.

I feel this court, and all courts, are called upon to administer justice and equity when the plain language of contracts and plain provisions of law do not intervene. Severe penalties and injury should not be inflicted on one when to refrain inflicts no hardships or injury on another. I think the judiciary and the legal profession might well remember in the discharge of official duties some of the high considerations of justice and equity. What is equity? It is defined as that principle of universal law which is called "natural justice." It might be said to be "justice functioning." In this connection I recommend a reading and rereading of the eloquent words of Justice O. M. Roberts, in Duncan v. Megette, 25 Tex. 245, at page 253.

There is some criticism of the courts and the legal profession indulged in these days. Much of it is uninformed. There are not nearly as many legal technicalities found in the law as is generally believed. This writer still believes the right as against the wrong and "common horse sense" rules the law. He has, nevertheless, within the past few weeks been impressed with a too current idea. A nationally prominent member and leader of our profession is quoted by a reliable member of the press as having said Lincoln could not practice law today, because he could not meet the requirements. In his day there were few books he was required to read, whereas, hundreds of volumes and thousands of pages come to many law offices in these modern days. He read few books and relied on "rustic justice." Only a few days subsequent to this comment one of our State leaders commented in the hearing of this writer that the public is losing or has lost confidence in the profession and in the courts. To this the writer cannot agree. But, if we have been carried far out to sea in a great volume of statutory and court made law that puts us beyond the reach of justice, then, if we hope to escape some such just criticism, we had better hark back to the "rustic justice" that Lincoln and Roberts knew.

The defendant interposes the four-year statute of limitation. If I have applied the correct rules of construction and have properly construed this insurance contract, then the cause of action did not arise until the

**824**

proof was made and the payment refused. Therefore, the statute has no application.

In my humble opinion the judgment of the trial court should be affirmed.